# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **MICHAEL ANTOINE MOORE,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| **vs.** ) | Civil Action Number |
| ) | **2:12-cv-344-AKK** |
| **MICHAEL J. ASTRUE,** ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Michael Antoine Moore ("Moore") brings this action pursuant to section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). Doc. 1. This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence, and, therefore, **AFFIRMS** the decision denying benefits.

### I.  Procedural History

Moore filed his application for Child's Disability Insurance Benefits under

Title II of the Social Security Act on April 27, 2009[1], alleging a disability onset date of July 1, 2002, due to chronic asthma and allergies.  (R. 90, 209, 213).  After the SSA denied his application on July 29, 2009, Moore requested a hearing.  (R. 90-96, 97-103).  At the hearing on  December 7, 2010, Moore was 19 years old with the equivalent of a high school education and no past relevant work.  (R. 53-89, 74, 213, 219).  Consequently, Moore has never engaged in substantial gainful activity.  (R. 23, 213).

The ALJ denied Moore's claims on May 19, 2011, which became the final decision of the Commissioner when the Appeals Council refused to grant review.  (R. 1-6, 17-38).  Moore then filed this action pursuant to 42 U.S.C. § 1383(c)(3).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if

---

[1] Moore's application does not appear in the record.

supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).  Specifically, the Commissioner must determine in sequence:

    (1)    whether the claimant is currently unemployed;

    (2)    whether the claimant has a severe impairment;

    (3)    whether the impairment meets or equals one listed by the Secretary;

    (4)    whether the claimant is unable to perform his or her past work; and

    (5)    whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"  *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to

prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, he must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[2]

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. *See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

---

[2] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale*, 831 F.2d at 1012. As such, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability. *Id*.

### IV. The ALJ's Decision

The ALJ first noted that because Moore applied for disabled child's insurance benefits, the Social Security Act provides payment of these benefits "if the claimant is 18 years old or older and has a disability that began before

attainting age 22." (R. 21) citing 20 C.F.R. 404.350(a)(5). In performing the five step analysis, the ALJ determined that Moore has never engaged in substantial gainful activity, and therefore met Step One, though he had worked at Wal-Mart in 2010 for a brief time, earning $849.31. (R. 23). Next, the ALJ found that Moore met Step Two because he suffered from the severe impairments of "asthma, allergic rhinitis, atopic dermatitis, allergic conjunctivitis, and food allergy." *Id.* The ALJ then proceeded to the next step and found that Moore failed to satisfy Step Three because he "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (R. 25). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that Moore

> has the residual functional capacity [RFC] to perform light work. . . except that he must have a temperature controlled environment, and have no excessive exposure to dust, fumes, and gases.

(R. 26). Moreover, the ALJ determined that although Moore has no past relevant work, considering his "age, education, work experience, and residual functional capacity, there are light jobs that exist in significant numbers in the national economy which [Moore] can perform." (R. 33). Consequently, the ALJ found that Moore "has not been under a disability, as defined in the Social Security Act,

from his attainment of age 18 through the date of [the ALJ's] decision." (R. 34).

## V.  Analysis

The court turns now to Moore's contentions that the ALJ failed (1) to properly consider all of Moore's impairments in combination and (2) to place proper emphasis on Moore's activities of daily living.  *See* doc. 8 at 5-10.  The court addresses each contention in turn.

### A.  <u>Failure to consider impairments in combination</u>

Moore argues that, "each of his impairments should have been considered in combination with each other," and that "the ALJ fails to properly consider [Moore's] migraine headaches in conjunction with [Moore's] asthma, despite noting headaches in his decision," and finally that "the ALJ's evaluation of [Moore's] combination of impairments stops at whether the combination meets a listing, but does not consider them beyond that step."  Doc. 8 at 5-6.  Accordingly, Moore concludes, the ALJ's decision is not "based upon substantial evidence."  *Id.* at 6.  The court finds Moore's contentions unpersuasive because the ALJ clearly reviewed Moore's entire medical history and found that "no treating, examining or reviewing physician has reported that [Moore's] asthma and allergies prevent him from engaging in work activity on a sustained basis," and that Moore's "medical records indicate a history of headaches, but not of a frequency or severity to

interfere with the performance of work on a sustained basis." (R. 30-31). Indeed, the ALJ discussed each of Moore's impairments, including noting Moore's history of asthma and allergies since childhood, but found the subjectively alleged intensity, persistence, and limiting effects of these impairments were not fully credible. (R. 23, 30). The record supports the ALJ's finding.

As related to his limitations, Moore testified that he tried to work at Wal-Mart for approximately four weeks but "just couldn't keep up" because of anxiety and asthma. (R. 78). Moore's mother, Keisha Yeldell, noted Moore's anxiety and nervousness and also testified that Moore has limitations because Moore's asthma and allergies, which are triggered by many things, including trees, smoke, cats, dogs, perfumes, and air fresheners, make it hard for Moore to get around on a daily basis. (R. 61). Yeldell testified also that Moore's asthma attacks trigger chest pains, which are "almost like a heart attack," (R. 66), and that doctors think Moore may have fibromyalgia, (R. 62-64). However, the ALJ noted correctly that the medical record contains no evidence of a fibromyalgia diagnosis. (R. 25).

Critically, neither Moore nor Yeldell mentioned anything about the purported disabling effects of Moore's migraines. *See* (R. 53-88). Rather, the medical evidence shows that when Moore sought treatment for his conditions, he consistently complained primarily of asthma and allergies and was treated for

those conditions predominately, rather than for migraines. For example, Dr. Adina Knight treated Moore at Alabama Allergy and Asthma Center beginning in June 2008 and diagnosed Moore with uncontrolled, moderate, persistent asthma and uncontrolled allergic rhinitis, moderate partially controlled atopic dermatitis (eczema), food allergy, and chronic allergic conjunctivitis. (R. 377). While Moore indicated that he had migraines in June and again in September 2008, Dr. Knight made no assessment or recommendation regarding the migraines. *See* (R. 375-78, 381-82). Moreover, in August 2010, Dr. Weily Soong, also at the Alabama Allergy and Asthma Center, reported that Moore was under his care for the asthma, which Dr. Soong described as a chronic condition that restricts Moore's breathing at times and can cause a tight feeling in his chest. (R. 424). Dr. Soong prescribed medications to control the asthma symptoms, and encouraged Moore to avoid certain known triggers, including cigarette smoke, strong odors like perfumes, cleaning supplies, air fresheners, undesirable climate, physical activity, and respiratory infections. *Id*. Critically, Dr. Soong also never mentioned Moore's migraines or any treatment related to that condition. *See id.* Finally, during Moore's last reported visit to the Alabama Allergy and Asthma Center in August 2011, Moore complained chiefly of tightness in his chest, shortness of breath, and a stuffy, runny nose. (R. 653-57). Although Moore also

reported having migraine headaches under his pertinent past history, the primary work-up concerned his asthma and allergies and no medication or treatment plan was indicated for his migraine pain.  *See id.*

The ALJ noted that St. Vincent's Hospital admitted Moore in September 2010 with chief complaints of a twitching spell.  (R. 571).  Again, although Moore indicated a past medical history of asthma and migraine headaches, St. Vincent's did not primarily treat Moore for the migraines.  *Id*.  Instead, the hospital focused on determining if Moore had meningitis and performed an MRI of Moore's spine and brain, which returned with no acute abnormalities, and a lumbar puncture that was negative for acute infection. (R. 548).  Moreover, St. Vincent's consulted a neurologist who evaluated Moore and found no neurologic problems.  *Id*.  Finally, while not specifically indicated for Moore's migraines, the discharge notes instructed Moore to take ibuprofen every six hours for his pain.  (R. 548, 556).

In sum, Moore correctly contends that the ALJ must consider the combined effect of his impairments.  Doc. 8 at 5 (citing *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) and *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987)).  However, by exhaustively evaluating each of Moore's impairments—and finding that the objective medical evidence establishes that Moore "does not have a ... combination of impairments that meets or medically equals one of the listed

impairments in 20 CFR Part 404, Subpart P, Appendix 1"—the ALJ sufficiently considered Moore's impairments *in combination*. *See* (R. 25, 23-32). Indeed, the Eleventh Circuit in *Walker* found an ALJ erred because he "made specific reference only to [claimant's] left ankle and obesity. The ALJ's findings do not mention [claimant's] arthralgias in the right knee, phlebitis in the right arm, hypertension, gastrointestional problems, or asthma, except to the extent that these 'subjectiv[e] complain[t]s do not establish disabling pain.'" 826 F.2d at 1001. Conversely, here, the ALJ discussed and analyzed each of Moore's severe impairments—asthma and allergies— as well as the non-severe impairment of migraine headaches, and reached a conclusion based on all of these impairments. (R. 23-32). *See also Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (citing *Jones v. Dept. of Health and Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991), for the proposition "that the following statement by an ALJ evidenced consideration of the combined effect of a claimant's impairments: while '[the claimant] has severe residuals of an injury to the left heel and multiple surgeries on that area, [the claimant does not have] an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4.'") (alteration in original). Moreover, the court finds crucial that in Moore's disability report, he reported disability only due to chronic asthma and

chronic allergies, (R. 213), that neither he nor his mother mentioned his migraine headaches during their testimonies, *see* (R. 53-88), and that no physician opined that Moore's asthma or migraines were disabling. Therefore, the substantial evidence supports the ALJ's determination that Moore's impairments were not disabling.

      **B.**    <u>**Undue emphasis on Moore's activities of daily living**</u>

Moore contends also that the ALJ placed undue emphasis on Moore's ability to perform activities of daily living. Doc. 8 at 6-9. Specifically, Moore states that the "ALJ concludes that because Plaintiff attempts to perform simple household tasks on occasion, shops on occasion, watches television, reads, plays video games, uses the computer, and talks to friends, that this demonstrates that Plaintiff is not disabled. Without going into the difficulties that Plaintiff has in performing these simple activities, Plaintiff submits that these limited activities are not what would be expected of a viable work candidate and certainly do not demonstrate that Plaintiff is capable of work activity." *Id*. at 6-7. To support his contention, Moore cites *Easter v. Bowen*, 867 F.2d 1128, 1130 (8th Cir. 1989), for the proposition that "an applicant need not be completely bedridden or unable to perform any household chores to be considered disabled." *Id*. at 7.

*Easter* is however not helpful because the ALJ did not rely solely on

Moore's ability to do household chores. As Moore correctly pointed out, the ALJ noted that Moore reported that his daily activities included taking a shower, taking medication, watching television, reading, talking on the phone, chatting online, and playing handheld video games, and that he had never been able to do normal activities without getting sick. (R. 28, 232-36). The ALJ also considered Moore's reports that he could make sandwiches, prepare frozen dinners, wash dishes, sweep, and iron, depending on how he felt, but that he could not do yard work because of his allergies and that he had difficultly with many activities because his condition triggers attacks – *i.e.*, loss of breath, chest pain, tiredness, dizziness, or complete lack of consciousness. (R. 234-37). The ALJ then found that Moore's daily activities were not consistent with disabling limitations. (R. 31). However, the ALJ relied on the medical record to make his findings about Moore. Specifically, the ALJ found that Moore's "medical records do not indicate that his impairments are uncontrolled with compliance with treatment, and his treating physicians have not reported that his impairments prevent him from working on a sustained basis." *Id*. Further, relying on the medical evidence, the ALJ found that Moore's RFC was consistent with his physicians' advise to avoid extreme activity, animals, and fumes. *Id*.

The court agrees with the ALJ's RFC and notes that while the ALJ noted

Moore's activities of daily living as one factor that demonstrated Moore is not disabled, the ALJ primarily relied on the medical record and placed no undue emphasis on Moore's activities. In short, the ALJ placed proper emphasis on Moore's activities of daily living, and the substantial evidence supports the ALJ's RFC determination.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Moore is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

**Done** the 13th day of December, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE